UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JULIE GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17CV844 RLW |
| | ) |
| BROKER SOLUTIONS, INC., | ) |
| d/b/a NEW AMERICAN FUNDING, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Compel Arbitration and Stay Proceedings (ECF No. 9). The motion is fully briefed and ready for disposition.

### Background

Plaintiff filed a lawsuit in the Circuit Court of St. Louis Count, alleging that during her employment, Defendants subjected her to unlawful acts of retaliation and discrimination based on her gender, age, and disability in violation of the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010, *et seq*. Defendants removed the case to federal court based on diversity of citizenship. According to the Petition, Plaintiff was employed by Defendant New American Funding ("NAF") first as a branch manager and then as an area manager. (Pet. ¶ 10, ECF No. 5) Plaintiff alleges that she was diagnosed with colon cancer and had to take leave for treatment and surgery. (Pet. ¶ 12) Upon returning to work, Plaintiff contends that she began to suffer harassment, humiliation, and bullying by her supervisor, Defendant John Reed ("Reed"), a Vice President at NAF, including demands for her private medical records to confirm her cancer. (Pet. ¶¶ 13-15) Plaintiff further asserts that Reed and other NAF representatives threatened to terminate her employment if Plaintiff did not accept lower compensation and higher performance

goals. Plaintiff claims that, as a result of the alleged discrimination, harassment, and retaliation on the basis of gender, age, and disability, she felt forced to resign from her position at NAF, resulting in a constructive discharge. (Pet. ¶ 19)

Defendants have moved to stay the case and send the dispute to arbitration based on a Loan Originator Employment Agreement ("Agreement") executed by Plaintiff as the Loan Originator ("LO") and NAF as the Company. (Defs.' Ex. A, ECF No. 9-1) The Agreement provides, "[i]t is the intent of Company and LO that every dispute, claim or controversy arising out of or relating to LO's employment with Company . . . including, without limitation, disputes regarding the termination of that employment, be resolved by binding arbitration." (Defs.' Ex. A p. 8) The Agreement further provides that the arbitration shall be arbitrated before the American Arbitration Association ("AAA"). (*Id.*) Additionally, the Agreement states, "[i]n consideration of the benefits provided to LO under this agreement, LO **further agrees to the terms of the Mutual Arbitrtion Agreement attached as Exhibit C to this Agreement.**" (*Id.*) (emphasis in original).

The terms of the Mutual Arbitration Agreement ("MMA") contained in Exhibit C provide that the parties "agree to arbitrate before a neutral arbitrator any and all existing or future disputes or claims between Employee and Employer, that arise out of or relate to Employee's . . . employment or separation from employment with Employer . . . ." (Defs.' Ex. A p. 18) Such claims include, *inter alia*, claims for fraud; breach of contract; wrongful termination; constructive discharge; tort; and discrimination, harassment or retaliation, on the basis of age, sex, disability or any other unlawful basis under federal, state, or common law. (*Id.*) The governing law provides that the parties agree to arbitrate under the FAA and that, to the extent not inconsistent with the FAA, the Agreement "shall be governed by the law of the state where

2

Employee works or worked at the time the arbitrable dispute or claim arose." (Defs.' Ex. A p. 21)

Plaintiff opposes sending the matter to arbitration, arguing that Defendant Reed lacks standing to compel arbitration. Additionally, Plaintiff argues that the Agreement is not supported by adequate consideration and that the Agreement is unconscionable.

## Discussion

The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, "'establishes a liberal federal policy favoring arbitration agreements.'" *M.A. Mortenson Co. v. Saunders Concrete Co., Inc.*, 676 F.3d 1153, 1156 (8th Cir. 2012) (quoting *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005)). "[w]hen deciding whether to compel arbitration, a court asks whether a valid agreement to arbitrate exists, and if so, whether the dispute falls within the scope of that agreement." *Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011) (citation omitted). "The Supreme Court has repeatedly noted that the Federal Arbitration Act was designed to combat longstanding hostility to arbitration by establishing 'a liberal federal policy favoring arbitration agreements.'" *Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A.*, 334 F.3d 721, 725 (8th Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Under the FAA, any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (citation omitted). This liberal policy includes employment-related claims. *Id.* at 947.

Upon thorough consideration of the motion to compel and the related memoranda by the parties, the Court finds that the parties should be compelled to arbitrate Plaintiff's claims against the Defendant. With regard to Plaintiff's assertion that Defendant Reed lacks standing, the

Eighth Circuit Court of Appeals has held that under the FAA, a nonsignatory may compel a signatory to arbitrate where the relationship between the two parties is sufficiently close to permit such enforcement. *Finnie v. H & R Block Fin. Advisors, Inc.*, 307 Fed. App'x 19, 21 (8th Cir. 2009) (finding that plaintiff's former supervisor could compel arbitration under the FAA where plaintiff asserted claims of racial discrimination, harassment, and retaliation). Here, Defendant Reed was Plaintiff's supervisor at NAF. The MAA specifically includes "claims involving any current or former officer, director, shareholder, agent or employee of Employer . . . ." (Defs.' Ex. A p. 18) Thus, the Court finds that Defendant Reed may enforce the arbitration Agreement under these circumstances.

The Court also finds that the Agreement is a bilateral contract providing adequate consideration under Missouri law. "A mutual promise between an employee and an employer to arbitrate employment disputes is valid consideration to create an enforceable bilateral contract." *Humphries v. SSM Health Care Corp.*, No. 4:17CV786 RLW, 2017 WL 1246699, at *2 (E.D. Mo. Apr. 5, 2017) (citing *Jiminez v. Cintas Corp.*, 475 S.W.3d 679, 685-86 (Mo. Ct. App. 2015)). Plaintiff argues, however, that the Agreement is lacks mutuality of obligation because it compels arbitration for those claims that employees would most likely bring against Defendants but exempts from arbitration claims that Defendant would most likely bring against its employees. Plaintiff also contends that the Agreement is unilateral because it can be modified in writing by the CEO of Employer and Employee.

"A contract that purports to exchange mutual promises will be construed as lacking legal consideration if one party retains the right to 'unilaterally divest itself of an obligation to perform the promise initially made.'" *Jimenez*, 475 S.W.3d at 686 (quoting *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 442 (Mo. Ct. App. 2010)). Courts determine whether an agreement

4

provides mutual obligation by looking at the language of the agreement, reading the terms of the contract as a whole, and giving each term its plain, ordinary, and usual meaning to decide the intent of the parties. *Id.* (citations omitted).

Here, Plaintiff points specifically to the "Claims not Covered by the Agreement" in the MAA. (Defs.' Ex. A p. 19)  Plaintiff argues that this section exempts Defendants from arbitrating claims that Defendants are most likely to bring against employees such as claims involving temporary or preliminary injunctive relief related to misuse of intellectual property, theft of trade secrets, violation of non-compete provisions, or breach of duty of loyalty. However, Plaintiff misreads the Agreement.  The MAA provides that claims not covered by the agreement include claims for workers' compensation, unemployment insurance, or state or federal disability insurance; claims for benefits under an ERISA plan; "claims for temporary or preliminary injunctive relief . . . **in aid of arbitration or to maintain the status quo pending arbitration**, in a court of competent jurisdiction with applicable law;" and any other dispute expressly excluded from arbitration by statute. (Defs.' Ex. A p. 19)  Included in covered claims are claims for fraud, promissory estoppel, fraudulent inducement of contract, or breach of contract, as well as unfair business practices "and any other tort or tort-like causes of action relating to or arising from the employment relationship or the formation or termination thereof." (*Id.*)

Contrary to Plaintiff's position, the MAA mutually covers claims that both the employee and the employer could raise, including discrimination claims brought by the employee, and contract, tort, or tort-like claims brought by the employer.  The only claims for temporary or preliminary injunctive relief not covered by the MAA pertain solely to arbitration.  Thus, the Court finds that the Agreement is supported by adequate consideration. *See, e.g. State ex rel.*

5

*Hewitt v. Kerr*, 461 S.W. 3d 798, 809 (Mo. 2015) (finding arbitration clause was supported by valid consideration where both the employee and employer signed the employment contract, and were both bound by the promise to arbitrate disputes).

In addition, the MAA belies Plaintiff's claim that Defendants may unilaterally modify the Agreement. In the Agreement signed by Plaintiff, both she and Defendant NAF agreed that the Agreement may be modified "only in a writing expressly referencing this Agreement and Employee by full name, and signed by the Chief Executive Officer of Employer and Employee." (Defs.' Ex. A p. 22) Plaintiff asserts that the CEO is the CEO of both the Employer and Employee and thus only the CEO's signature is required to modify the Agreement. Giving the terms their plain meaning, the Court finds that the MAA may only be modified by in writing and signed by both the CEO of the Employer and Plaintiff, as the Employee. Thus, because the arbitration Agreement contains a mutual promise to arbitrate and is binding on both sides, with no party retaining the unilateral ability to avoid its contractual obligations, the Court finds that the Agreement contains valid consideration to compel the Plaintiff to arbitrate her claims. *Colton v. Hibbett Sporting Goods, Inc.*, No. 2:16-cv-04002-NKL, 2016 WL 3248578, at *2 (W.D. Mo. June 13, 2016).

Last, Plaintiff argues that the Agreement is unconscionable because it was drafted by Defendants; is a standardized contract that covers most of the employees of NAF; was presented to employees on a "take-it-or-leave-it" basis with no opportunity to negotiate; was a condition of employment; and presented the false choice to employees of giving up their right to trial by jury or giving up their jobs. Plaintiff asserts that the disparity in bargaining power between Plaintiff and Defendants, as well as the harsh one-sidedness, renders the MAA unconscionable. The Court disagrees.

"Under Missouri law, '[u]nconscionability has two aspects: procedural unconscionability and substantive unconscionability.' . . . 'Procedural unconscionability deals with the formalities of making the contract, while substantive unconscionability deals with the terms of the contract itself.'" *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (quoting *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858 (Mo. 2006)). Both procedural and substantive unconscionability must be present before a contract or clause can be voided. *Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 300, 308 (Mo. Ct. App. 2005).

Plaintiff argues that Defendants' superior bargaining power makes the MAA procedurally unconscionable. However, Plaintiff does not contend that she was unable to read the arbitration agreement or that Defendant coerced her to sign the agreement using high-pressure tactics. Instead, "[a]lthough [NAF] may have been in a superior bargaining position, the contract terms were clear, and a reasonable person could expect that disputes would be arbitrated." *Fallo*, 559 at 878; *see also Humphries*, 2017 WL 1246699, at *2 ("The fact that one party has a superior bargaining position over the other party does not, standing alone, make the agreement unconscionable."). The Court therefore finds that the MAA is not procedurally unconscionable, and the Court need not address the substantive unconscionability question. *Fallo*, 559 F.3d at 879.

For all the foregoing reasons, the Court finds that the MAA is valid and enforceable and that Plaintiff should be compelled to arbitrate her claims pursuant to the Agreement. Thus, the Court will stay the case and grant Defendants' motion to refer Plaintiff's claims to arbitration. *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir. 1994) ("A federal court must stay court proceedings and compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement.").

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration and Stay Proceedings (ECF No. 9) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **STAYED** until the arbitration process is completed. The parties shall notify the Court of the completion of the arbitration process or any other development that would affect the stay in this case.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall administratively close this matter.

Dated this 16th day of June, 2017.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**